Richmond.

89   679
f110   924

## SNODGRASS V. COMMONWEALTH.

### February 16th, 1893.

1. HOMICIDE—*Verdict—Evidence.*—Accused deliberately raised a pistol under arm of a witness and shot the deceased. Several hours before he made threats to shoot deceased before sun-down, and talked angrily with him several times during the day, and flourished a pistol as if threatening him.

HELD:

> A verdict of murder in the second degree fully warranted by the evidence.

2. THREATS.—Evidence of threats of the accused before, and threats to and assault upon a witness after, the shooting, is admissible to prove the demeanor of accused as indicating his *animus*.

3. WITNESS—*Recalling of.*—It is no error for the trial court to recall a witness to ask him why he had advised the accused to claim that the shooting was an accident.

4. INSTRUCTION.—At the trial the court refused to instruct the jury that "testimony concerning oral declarations of a party, whether threats, admissions, or otherwise, is regarded by the law as unreliable and unsatisfactory; and the jury should be cautious how they give credence to such testimony."

HELD:

> Not error.

5. ACCUSED—*Witness.*—It was not improper for the commonwealth to ask its own witness what was his relationship to the prisoner.

6. RECORD—*Proceedings in court.*—It is not necessary, under Code, § 3114, to read the court orders in court each day, but it is sufficient if they are drawn up and read at the conclusion of the trial during that term.

Error to judgment of circuit court of Wise county, rendered on the 17th day of May, 1892, affirming the judgment of the county court of said county, rendered on the 8th day of December, 1891, whereby the plaintiff in error was convicted

of murder in the second degree, and sentenced to the penitentiary for eighteen years.

The case is, briefly, as follows: On the 4th day of July, 1891, the plaintiff in error, Webster Snodgrass, Morgan Thacker (now dead), and others, in considerable numbers, were assembled at a pic-nic at a town called Norton, in the county of Wise.

The plaintiff in error is shown by the evidence to have been passing about the grounds for some time, exhibiting a pistol; and he came up to Jones' Spring, and said: " A man has to die before the sun goes down, and another one, if he says anything." Pulling out his pistol, he further said : " This is what can do it." Morgan Thacker (the deceased) was coming down out of the crowd, and he pointed his finger at him, and said : " Yonder comes the very d——d man now." This was between 12 and 1 o'clock of the day Thacker was killed by the plaintiff in error. A little later, on the same day, he was seen by a witness standing off talking angrily and profanely with the deceased, pistol in hand, raising and lowering it. He approached this witness (Robinette), saying : " Mr. Robinette, G— d—— you; what have you got to do with this ? " A few seconds after, Robinette having passed on and into a store near by, and another witness, who was friendly with the plaintiff in error, standing facing him with his hand on his right shoulder, the deceased being behind witness, in front of the plaintiff in error, and a few feet off— variously stated between six and ten feet off—the plaintiff in error held his pistol under witness' arm and fired it, and Thacker fell mortally wounded. The accused *said nothing whatever*—not a word, although a fellow-man, slain by his hand, was lying writhing in agony almost at his feet. This witness (Culbertson), actuated by a friendly feeling for the accused, (as he says, liking him better than he did the deceased,) said to the accused, " *if that was an accident, claim it*

*as such.*" Thus prompted, the accused claimed it as an accident. And this is the theory of the defense.

The accused stood silent for a brief time, then walked out ; but he went out either sideways or backward, holding his *pistol in his hand, and pointing it in the direction of where the wounded man was.*

The shooting was in a saloon. The accused had been in the house several minutes, when the deceased came in with a companion, when in a minute the shot was fired.

The witness, Robinette, who has been referred to as having been asked, " What have you got to do with it? " by the accused, being in some conversation with the wounded man, seeking to console him, and who was assuring him that his friends would take care of the matter, was again rudely accosted by the accused with : " G— d—— you, you have said too much already," and would have assaulted the witness if the guard had not held him.

After his arrest, he said the deceased had cut his throat (referring to an antecedent difficulty with the deceased), and if some of them did not look out they would go the same way he had gone. This was ten or fifteen minutes after the shooting. He also said : " That d——d rascal [meaning deceased] has always been trying to cut me with a knife, and shoot me." And again referring to deceased, he remarked : " G— d—— him ; he was not fooling with Oscar Emmons when he was fooling with me." He was here referring to a difficulty the deceased had had with a man named Emmons.

On several occasions during that day he was making threats to kill two men, without naming them. One man was to be killed, and another also, if he said anything. (This was, possibly, a reference to the witness, Robinette, whom he abused and attempted to assault after he had shot the deceased.)

The evidence shows that the " accused was drinking some,"

in the language of one witness—drunk and staggering, in the language of others; but there is no evidence to show that he was crazed or unconscious, or in such a condition as not to know what he was doing. And he boasted that he would not run away, because " we " had too much money for that.

At the trial there were numerous exceptions taken to the several rulings of the court, which are assigned as error here. The jury found the accused guilty of murder in the second degree, and fixed the term of his confinement in the penitentiary at eighteen years; and the trial court overruled the motion of the accused to set the said verdict aside and grant him a new trial, and rendered judgment in accordance therewith; and the accused excepted.

The case was carried, by writ of error, to the circuit court of Wise county, where the said judgment was affirmed May 17th, 1892. Whereupon the case was brought to this court, by writ of error from the said judgment of the circuit court, affirming the said judgment of the county court.

*Burns & Fulton*, for plaintiff in error.

*Attorney-General R. Taylor Scott*, for commonwealth.

LACY, J., (after stating the case,) delivered the opinion of the court.

The first assignment of error here is that the record does not show that the special grand jury was not ordered by the judge in vacation. This assignment was abandoned at the argument, upon the ruling in *Robinson* v. *The Commonwealth*, 88 Va. Rep. 903, the question having been raised by motion to quash the indictment, which motion the court overruled.

The second assignment of error is the action of the court in

finding for the commonwealth upon this same question raised by plea, in which there was no error. The law does not require, as this assignment insists, that a special grand jury shall be summoned by the order of the judge in vacation.

Section 3978 of the Code of Virginia provides as follows : " A special grand jury may be ordered at any time by a county, corporation, or hustings court, or the judge thereof in vacation, the jurors to be summoned from a list furnished by the judge; and when a grand jury, regular or special, has been discharged, the court, during the same term, may impanel another grand jury, which may be a special grand jury." 88 Va. 903.

The third assignment of error is that there is no *venire facias* in the record directed by the court; but, if there is, that the list of jurors furnished by the judge consists of twenty-four names, instead of twenty, and is, therefore, fatally defective. The motion to quash the *venire facias* on this ground was overruled by the trial court, and the plea overruled likewise; and the accused excepted. There is no error in this action of the court.

The *venire facias* is in the record, and the jurors were summoned from a list furnished by the judge. The list does contain twenty-four names; but there is no violation of the law in this. Twenty persons are to be summoned *from* a list to be furnished by the judge. The number to be placed on the list to be furnished by the judge is not limited nor fixed by the law; and it is settled that the list may, and, indeed, should, contain more than twenty. *Sand's Case*, 21 Gratt. 878; *Albert Mitchell's Case*, 33 Gratt. 850; *Drier* v. *Commonwealth*, *ante* p. 529.

The fourth assignment of error was that the trial court overruled the motion of the accused to quash the second *venire facias*, containing six names. The record shows no error in this action, and the counsel, at the hearing, admit that they

can cite no authority and make no argument to support this assignment; and we perceive no error in this action of the trial court.

The fifth assignment of error is the admission by the court of the threats of the accused that he intended to kill somebody before sun-down, as set forth above. But there was no error in this. The accused in this case announced his purpose to kill somebody that day; he said he would kill the deceased, and pointed him out when in sight as the person he would kill, and made many demonstrations looking toward a difficulty with the deceased, standing aside with and talking in a loud, rude, and angry voice to the deceased, and, failing to create a row to give the desired pretext, concealed himself behind another person, and extended his arm, pistol in hand, and looking at the deceased, fired his pistol, and killed the deceased, without pretext, and subsequently, when so advised, and now, claims that it was an accidental shooting. If we are seeking for the motive of the accused for his act, then there is no sound principle upon which these threats were to be rejected. They were not all impersonal, but such as were, where he did not name any particular person, were yet admissible as disclosing the motive and as facts in the transaction. *Muscoe* v. *The Commonwealth*, 87 Va. Rep. 464; *Honesty* v. *The Commonwealth*, 81 Va. Rep. 300.

The sixth assignment of error is as to the action of the trial court in overruling the motion of the accused to strike out the evidence of his threats to the witness, Robinette, and his attempt to assault him, because this was a different offense, for which the accused was not on trial. But this evidence was not offered nor used for the purpose of a second prosecution, but to show the demeanor of the accused, as indicating his motive and *animus*, who was defending himself by the assertion of an accident, without evil motive, and here we find the slayer throwing himself into a passion, and cursing

and abusing, and seeking to throw his coat (as the record states it), in order to assault a fellow-man, who sought, by sympathetic words to the dying man, to allay his mental anguish. And as such it was clearly admissible.

The seventh assignment of error is as to the action of the trial court in recalling the witness, Culbertson, to ask him why he had advised the accused to claim that the shooting was an accident, he having stated that fact when on the stand. It does not appear to be an abuse of the discretionary power of the trial court to recall a witness to ask an explanation of a statement already made. It was not an injury to the accused. It was proper that the trial court and jury should know whether there was any special reason for this, and the witness admitted that he was more friendly to the accused than to the deceased.

The eighth assignment of error is as to the action of the trial court in excluding hearsay evidence, by the father of the accused, of what the accused said in his own behalf to his said father in secret; whereas the accused himself gave his own version of the affair, under oath, as a witness, subject to cross-examination. There was no error in this action. The excluded statement was hearsay merely, and did not rise to the dignity of legal evidence.

The ninth assignment is that the trial court did not stop the speech of the commonwealth's attorney, in its denunciation of the accused for his fiendishness in seeking to assault the witness, Robinette, for his words of consolation to the dying man. This was a legitimate argument, and the court was right not to interfere. The prisoner was represented by able counsel, who had made their arguments unchallenged, and it was the right and the duty of the commonwealth's attorney to represent the side of the commonwealth to the best of his ability. It was not intemperate comment, unwarranted by the facts and circumstances shown by the proofs in the case.

The tenth assignment needs only to be stated. A dispute arising between the counsel as to what a witness had said, the court had the witness recalled, and thus settled the dispute; which was plainly right.

The eleventh assignment of error is as to the action of the court in refusing, after the argument had closed, to instruct the jury as follows: "The court further tells the jury that testimony concerning oral declarations of a party, whether they be threats, admissions, or other declarations, is regarded by the law as unreliable and unsatisfactory; and the jury should be cautious before they give credence to such testimony"— the counsel reading from Greenleaf on Evi., sec. 200, to support this. There is no error in this action of the trial court. The instruction did not correctly expound the law. The section of Greenleaf, read in part to the jury, concludes thus: "But when the admission is deliberately made, and precisely identified, the evidence it affords is often of the most satisfactory nature." The court had already instructed the jury upon the law of the case, as is inferrible from the language of this instruction. The instruction rejected was not applicable to the case, and was calculated to mislead the jury, by giving them at this stage of the trial a caution against believing the admissions deliberately made and precisely identified. Upon the testimony of numerous witnesses it was distinctly shown that the accused had declared his purpose to kill, and pointed out his victim, whom he did kill that very day. If an instruction rightly expounds the law, and there is any evidence, however slight, to which it is applicable, it should be given. *Honesty* v. *Commonwealth, supra; Hopkins* v. *Richardson,* 9 Gratt. 486. This instruction can be sustained on neither ground.

The twelfth assignment is that the commonwealth asked its own witness what was his relationship to the prisoner, and that this was an effort to discredit its own witness. It is

usual and a proper precaution for any party introducing a witness, who, although related or connected with a party to the action, is yet a competent witness, to show the relation or connection; otherwise, when proved by the other side, it might for that cause discredit the witness to some degree, and it is the best practice to do so.

The thirteenth assignment is because the court orders were not read in court each day, but signed at the conclusion of the trial during the term—citing *Quinn* v. *The Commonwealth*, 20 Gratt. 143, decided November, 1870, as showing that the law required that the record of the court's proceedings should be signed immediately after the proceedings are read, except the last day, which should be read immediately before adjournment. But the law in force at that time was essentially different from the law now in force.

Section 5, ch. 161, of the Code of 1860, in force in 1870, required that the records should be read in a county court either on every day the court sits or on the next day, except the last day, which should be read the same day, and, after being read and corrected, if necessary, should be signed by the presiding judge or justice.

The law now in force on this subject (section 3114 of the Code of Virginia) requires that the proceedings shall be drawn up by the clerk and read *during the term*, which was done in this case.

It is assigned as the sixteenth assignment that the court erred in overruling the motion of the accused to set aside the verdict and grant to him a new trial. But the statement of the evidence, already set forth herein, shows that there was no error in this action of the trial court. We cannot say that the verdict in this case was contrary to the evidence or without evidence, but it appears to be fully warranted by the evidence adduced at the trial and certified in the record.

There is one assignment of error, in the brief filed at or

shortly before the hearing here, not set forth in the petition for the appeal, which we will briefly notice. It is that the following order was entered: " On the motion of the defendant, the foregoing cause is continued for the defendant." And it is claimed that, as this order does not show that the prisoner was personally present when it was made, it follows, from the decisions of this court, that the judgment complained of must be reversed, regardless of any other question in the case. It was said by Samuels, J., in *Hooker's Case*, 13 Gratt. 766: " It is the right of any one, when prosecuted on a capital or criminal charge, to be confronted with the accusers and witnesses, and it is within the scope of this right that he be present, not only when the jury are hearing his case, but at any subsequent stage when anything may be done in the prosecution by which he is affected." *Sperry* v. *Commonwealth*, 9 Leigh; *Jackson* v. *Commonwealth*, 19 Gratt. 668; *Bond* v. *Commonwealth*, 83 Va. 581; *Shelton* v. *Commonwealth*, which is cited as authority for the proposition that it was necessary for the accused to be present when this order was made. In this case the record shows affirmatively that the accused was present, and not absent, when this order was entered.

The record states that, *on the motion of the defendant*, the case was continued for the defendant. There was no ground for believing that he was not present, but the contrary.

(1) The record states that he made the motion, which it would not have stated if his counsel had made it.

(2) The record does not show that he had any counsel at this time, and he probably had none.

(3) He was indicted at the September term, this order was made at the October term, and at the November term a motion was made for him by counsel, and the record states that he was present.

(4) If this point had really been in the case, the counsel,

it may reasonably be inferred, would have stated it in his petition for a writ of error, along with the numerous other assignments of error; whereas it is not referred to until the brief is prepared, a few days before the trial.

Conjecture is not profitable, however, in the face of the record, which states that the motion was made by the defendant, which could not be true if the defendant was absent.

Upon the whole case, we are of opinion that there is no error in the judgment complained of, and the same is affirmed.

JUDGMENT AFFIRMED.