# .CASES

## ARGUED AND DETERMINED

IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS, THE DISTRICT COURTS, AND THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA

---

## SNYDER v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit.   November 7, 1922.)

### No. 1988.

1. **Arrest** ⊕⟳63(4)—**Intoxicating liquors** ⊕⟳249—**Search and arrest of person without warrant held unlawful.**

   Forcible search and arrest of defendant without a warrant by a prohibition agent on suspicion only that he was transporting liquor on his person in violation of law *held* unlawful.

2. **Criminal law** ⊕⟳394—**Evidence unlawfully obtained from defendant inadmissible.**

   In the federal courts evidence obtained from defendant by an unlawful search is inadmissible against him.

   Woods, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Northern District of West Virginia, at Parkersburg; William E. Baker, Judge.

Criminal prosecution by the United States against George V. Snyder. Judgment of conviction, and defendant brings error.   Reversed.

For opinion below, see 278 Fed. 650.

Jno. B. Wilson and F. L. Maury, both of Wheeling, W. Va., for plaintiff in error.

T. A. Brown, U. S. Atty., of Parkersburg, W. Va., and W. C. Grimes, Asst. U. S. Atty., of Keyser, W. Va.

Before WOODS and WADDILL, Circuit Judges, and GRONER, District Judge.

GRONER, District Judge. This is a writ of error to the District Court of the United States for the Northern District of West Virginia, at Parkersburg.

Plaintiff in error, Snyder (hereinafter spoken of as defendant) was convicted in the District Court at Parkersburg, W. Va., on the 30th

---

⊕⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

285 F.—1

day of January, 1922, of a violation of the National Prohibition Law (41 Stat. 305). The principal ground upon which we are asked to reverse the judgment is that the lower court erred in admitting, over defendant's objection, certain evidence against him which he insists was inadmissible and should have been suppressed because unlawfully obtained. The facts, briefly, are these:

[1] Defendant, about 2 o'clock in the afternoon of the 5th of November, 1921, while standing in one of the public streets in the city of Wheeling, W. Va., was approached by a federal prohibition officer, who, observing the inside pocket of his overcoat bulged out and the neck of a bottle protruding therefrom, walked up to him, placed one hand on his shoulder, remarked that he "had beat him to it," forcibly lifted the bottle halfway out of the pocket with the other, and, finding it to contain a liquid of the appearance of whisky, placed him under arrest, and took him, in spite of his protest, and a demand for a warrant, into a nearby store, searched him, finding three other similar bottles, afterwards found to contain whisky, and then took him before a United States commissioner, by whom he was bailed for his appearance at a subsequent date. After the hearing before the commissioner, but in advance of the trial in the District Court, defendant filed a petition, duly verified, showing the circumstances of his arrest and search, claiming that the same were unlawful and in violation of his constitutional rights, and praying that the evidence obtained by the arrest and search be suppressed. To this petition the district attorney filed an answer for the United States, admitting the arrest and search without warrant, but denying its unlawful nature upon the ground that the offense charged, i. e., transportation of liquor, was committed in the presence of the officer.

The arresting officer admitted at the trial that he did not know the nature of the contents of the bottle until after he had forcibly taken the same from defendant's pocket. The lower court denied the petition, and in the trial that was subsequently had before a jury the whisky was admitted in evidence, and the question of the legality of the manner in which it was secured foreclosed by a ruling of the court that that question had already been passed upon and was no longer open.

What we are therefore called on to determine is whether evidence of a misdemeanor obtained under the circumstances hereinabove enumerated is, where seasonable motion for its suppression has been made, admissible at the trial.

That an officer may not make an arrest for a misdemeanor not committed in his presence, without a warrant, has been so frequently decided as not to require citation of authority. It is equally fundamental that a citizen may not be arrested on suspicion of having committed a misdemeanor and have his person searched by force, without a warrant of arrest. If, therefore, the arresting officer in this case had no other justification for the arrest than the mere suspicion that a bottle, only the neck of which he could see protruding from the pocket of defendant's coat, contained intoxicating liquor, then it would seem to follow without much question that the arrest and search, without first having secured a warrant, were illegal. And that his only justifi-

cation was his suspicion is admitted by the evidence of the arresting officer himself. If the bottle had been empty or if it had contained any one of a dozen innoxious liquids, the act of the officer would, admittedly, have been an unlawful invasion of the personal liberty of the defendant. That it happened in this instance to contain whisky, we think, neither justifies the assault nor condemns the principle which makes such an act unlawful.

"* * * Common as the event may be, it is a serious thing to arrest a citizen, and it is a more serious thing to search his person; and he who accomplishes it must do so in conformity to the laws of the land. There are two reasons for this; one to avoid bloodshed, and the other to preserve the liberty of the citizen. Obedience to law is the bond of society, and the officers set to enforce the law are not exempt from its mandates." Beam Case, 104 S. C. 146, 88 S. E. 441, L. R. A. 1916E, 714.

[2] It follows from what has been said that the evidence of the misdemeanor charged in this case was illegally acquired; and this brings us to the question in the case, namely, whether evidence so illegally acquired should have been excluded in the trial subsequently had.

In some of the state courts evidence thus obtained has been admitted, such courts holding that its admissibility is not affected by the illegality of the means through which it was obtained, or, as was said by the Supreme Court of Illinois, in Gindrat v. People, 138 Ill. 103, 27 N. E. 1085:

"Courts, in the administration of the criminal law, are not accustomed to be over sensitive in regard to the sources from which evidence comes."

In the courts in which this rule prevails the only remedy of the injured person is an action—too frequently bootless—against the offending official. In the courts of the United States a different rule prevails. The rights guaranteed under the Fourth and Fifth Amendments of the Constitution are declared to be important to the political liberty of the citizen and to the welfare of the country.

"* * * They are to be regarded as of the very essence of constitutional liberty, and that the guaranty of them is as important and as imperative as are the guaranties of the other fundamental rights of the individual citizen—the right, to trial by jury, to the writ of habeas corpus, and to due process of law." Gouled v. U. S., 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 647.

The federal courts have therefore adopted the policy of excluding evidence illegally obtained by a federal officer, whether the evidence so obtained was by unlawful invasion of his home or of his person, on the ground that to hold otherwise would be to require him to supply evidence against himself. So fully have these questions been discussed in recent opinions of the Supreme Court that we regard anything more than a reference to the cases useless, as well as wholly out of place. Boyd v. U. S., 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746; Weeks v. U. S., 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177; Silverthorne Lumber Co. v. U. S., 251 U. S. 385, 40 Sup. Ct. 182, 64 L. Ed. 319; Gouled v. U. S., 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 647; Amos v. U. S., 255 U. S. 313, 41 Sup. Ct. 266, 65 L. Ed. 654.

For the reasons stated, the judgment of the lower court should be, and is, reversed, with instructions to grant a new trial in accordance with this opinion.

Reversed.

WOODS, Circuit Judge (dissenting). The limits of authority of officers to arrest for violation of the National Prohibition Act are now of importance. For this reason I venture to state the grounds of my disagreement with the majority of the court.

The federal prohibition officer arrested Snyder without a warrant, and took from his person four pints of whisky. After the indictment was found the defendant by a formal petition asked the District Judge to hold the evidence of his guilt obtained by the search incompetent, and order "that the United States be not allowed to use" it, on the ground that the arrest of defendant and the search of his person without a warrant was illegal. On this petition the District Judge took testimony. The federal officer, Arrington, testified that while state officers were searching defendant's premises for intoxicating liquor under a search warrant he came upon the defendant on the street near by, with his hands in his trousers pockets and the neck of a pint bottle showing from his overcoat pocket; that without a warrant of arrest he approached the defendant, pulled the bottle out of his pocket, asked him to go inside his store, searched him, and found four pints of whisky on his person. The defendant testified, denying that the neck of the bottle was protruding from his pocket, but admitting that he did have on his person four pints of whisky. The District Judge dismissed the petition, finding the officer was justified in arresting the defendant.

When an officer is authorized by statute to arrest for a misdemeanor committed in his presence or on discovering a person committing a misdemeanor, to justify arrest the officer must have personal knowledge acquired at the time through his hearing, sight, or other sense of the present commission of the crime by the accused. But this does not preclude the idea that the requisite knowledge may be based on a practically certain inference drawn by a reasonable mind from the testimony of the senses. An offense is in the view of the officer when his senses afford him knowledge that it is being committed. Elrod v. Moss (C. C. A. 4th Circuit) 278 Fed. 130; Piedmont Hotel Co. v. Henderson, 9 Ga. App. 672. 72 S. E. 51; United States v. Borkowski (D. C.) 268 Fed. 408, 412; 5 C. J. 416; 84 Am. St. Rep. 686, note. Whether the offense was committed in the presence of the officer in this sense is primarily a question for the trial judge, and his finding should not be disturbed on appeal unless it is without support in the evidence.

But the arrest and search were illegal, and the testimony obtained thereby incompetent because the federal prohibition officer had no authority to arrest without a warrant for the misdemeanor of having intoxicating liquor in his possession.

At common law a peace officer was not authorized to make an arrest without warrant for any misdemeanor committed in his presence

except a breach of the peace. State v. Lutz, 85 W. Va. 330, 101 S. E. 434, 439; 5 C. J. 401, and cases cited.

In most states, however, there are statutes authorizing either peace officers generally or particular officers to arrest for any misdemeanor committed in their presence, although it be not a breach of the peace. These statutes are constitutional and do not impair the rights of the citizen under the Fifth Amendment of the Constitution of the United States or similar state constitutional provisions. Burroughs v. Eastman, 101 Mich. 419, 59 N. W. 817, 24 L. R. A. 859, 45 Am. St. Rep. 419; State v. Byrd, 72 S. C. 104, 51 S. E. 542.

Section 788 of the Revised Statutes of the United States (Compiled Stats. § 1312) provides that United States marshals shall have in each state the same powers in executing the laws of the United States as sheriffs and their deputies in such states may have by law in executing the laws thereof. This provision of the Revised Statutes has been applied in Carico v. Wilmore (D. C.) 51 Fed. 196; In re Acker (C. C.) 66 Fed. 290; State v. Dill, 48 S. C. 249, 26 S. E. 567.

The statute of West Virginia (Code of 1913, § 2775) authorizes a justice of the peace or a constable to arrest for an offense committed in his presence of which a justice has jurisdiction. This statute does not extend the authority to arrest without a warrant to sheriffs or other officers not therein mentioned. State v. Lutz, 85 W. Va. 330, 101 S. E. 434, 438.

I am unable to find any statute of the state of West Virginia authorizing sheriffs or their deputies to arrest without a warrant for a misdemeanor committed in their presence. And therefore United States marshals or deputy marshals have no authority to arrest without warrant under Revised Statutes, § 788.

Section 1014 of the Revised Statutes (Compiled Stat. § 1674) provides that an offender against the laws of the United States may be arrested by certain officers therein mentioned "agreeably to the usual mode of process against offenders in such state." But neither United States marshals nor prohibition officers are mentioned in the section among the officers who may make such arrest, and therefore that statute has no application. John Bad Elk v. United States, 177 U. S. 535, 20 Sup. Ct. 729, 44 L. Ed. 874. It follows also that section 2, tit. 2, of the National Prohibition Act, making section 1014 of the Revised Statutes applicable to the enforcement of the National Prohibition Act, did not authorize the arrest.

Section 28, tit. 2, of the National Prohibition Act confers upon prohibition inspectors and other officers of the United States whose duty it is to enforce criminal laws the power and protection in the enforcement of the Prohibition Act "which is conferred by law for the enforcement of existing laws relating to the manufacture or sale of intoxicating liquors under the law of the United States." Act March 1, 1879, c. 125, § 9 (Compiled Stat. § 1676), authorizes any marshal or deputy marshal who shall find any person operating an illicit distillery to arrest such person and take him before some judicial officer to be dealt with according to the law. But I can find no provision of the

law which authorizes a marshal or deputy marshal to arrest without warrant a person found in possession of contraband liquor either in the war prohibition statute or in the old revenue statutes.

Section 26, tit. 2, of the National Prohibition Act authorizes prohibition officers or any officer of the law to arrest any person discovered by him to be transporting intoxicating liquor in a vehicle; but it furnishes no authority to an officer to arrest a person discovered by him to have liquor on his person.

It seems to me, therefore, that the officer had no authority either under the common law or under any statute of the United States to arrest and search the defendant without a warrant upon discovering that he had liquor in his possession.

I think, nevertheless, that the judgment should be affirmed. If all the testimony obtained by the arrest and search be left out of consideration, the evidence which remains was strong against the defendant. Pockets necessarily bulging with four pints of whisky in them, with the neck of a pint bottle protruding from one of them, seems to me to be convincing according to all human experience that the man has intoxicating liquor in his possession, when as in this case there is no denial or explanation of such pregnant facts.

In addition to this, the record shows that in support of his petition to suppress the evidence obtained by his arrest and search the defendant offered himself as a witness before the District Judge and there on cross-examination testified, without objection or claiming any privilege, that he was guilty of having the four pints of liquor in his possession. This court therefore knows beyond all doubt, if not from competent testimony on the trial, certainly from defendant's testimony printed as a part of the record, that the defendant is guilty. "Examination of the entire record" therefore shows that nothing that occurred on the trial affected the defendant's substantial rights.

I venture to think it is to just such a case that the amendment of February 26, 1919, to section 269 of the Judicial Code (Comp. St. Ann. Supp. 1919, § 1246) applies, and that a new trial should be refused. That section provides:

"On the hearing of any appeal, certiorari, writ of error, or motion for a new trial, in any case, civil or criminal, the court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties" 40 Stat. 1181.

It was so construed in principle in the following cases: Horning v. District of Columbia, 254 U. S. 135, 41 Sup. Ct. 53, 65 L. Ed. 185; Dye v. United States (C. C. A. 4th Circuit) 262 Fed. 6; Sneierson v. United States (C. C. A. 4th Circuit) 264 Fed. 268; Lucadamo v. United States (C. C. A.) 280 Fed. 653.

I think the judgment should be affirmed.