### PARK v. UNITED STATES.

(Circuit Court of Appeals, First Circuit. January 2, 1924.)

No. 1646.

**1. Intoxicating liquors ☞255—Return of liquor seized without warrant and its exclusion from evidence held properly denied.**

In a prosecution for unlawfully transporting intoxicating liquor, seized without a warrant, accused's motion for the return of the liquor and for its exclusion from evidence was properly denied, where there was no evidence that the liquor was in the possession of federal officers or of any officer of the court.

**2. Criminal law ☞730(13)—District attorney's statement that accused had pleaded guilty in municipal court, if improper, harmless, in view of court's direction to disregard it.**

In a prosecution for unlawfully transporting intoxicating liquor, a statement by district attorney, in opening, that accused had pleaded guilty in police court the morning after his arrest, if improper, was harmless, where the court told jury to disregard it, unless sustained by the evidence, and excluded sustaining evidence.

**3. Criminal law ☞394—When evidence as to alcohol taken from defendant, accused of transporting intoxicating liquors, competent.**

In a prosecution for unlawfully transporting intoxicating liquor, evidence as to the alcohol taken from defendant's automobile is competent: (1) If the seizure was made by state or city officers without the co-opera-

tion of federal officers, even if the seizure was illegal; (2) if the seizure was made by the state or city officers with the aid of federal officers, and the local officers acted under a local search warrant or state statute; or (3) if the seizure was made by a federal officer under a federal search warrant or federal statute authorizing the seizure.

**4. Criminal law ⬅394—Evidence held to warrant finding accused was arrested by city officers, aided by federal officer, and evidence found admissible.**

In a prosecution for transporting intoxicating liquor, evidence *held* sufficient to warrant finding that accused was arrested by city and state officers, aided by a federal officer, and that the state or city officers undertook to act in pursuance of state law, thus rendering admissible evidence as to liquor found.

**5. Intoxicating liquors ⬅249—When seizure of unlawfully transported liquor without warrant is authorized.**

Under National Prohibition Act Oct. 28, 1919, tit. 2, § 26 (Comp. St. Ann. Supp. 1923, § 10138½mm), if federal officer has ascertained facts through the exercise of his senses of sight and smell, etc., and from other sources of information, that would justify a reasonably prudent man in believing that the crime of transporting liquor in a vehicle contrary to law was being committed in his presence, a seizure of liquor without a warrant would be authorized.

**6. Criminal law ⬅394—Intoxicating liquors ⬅249—Seizure without warrant held lawful under state law, and testimony of federal officer aiding therein was properly received.**

Where city police officers, on shaking a standing automobile which they suspected of transporting liquor, heard a motion of cans and a gurgling sound, and the driver, on being arrested, said that he had liquor in the car, the officers had reasonable ground for seizing the liquor without a warrant, under Pub. St. N. H. 1901, c. 250, § 3, chapter 251, § 6, and chapter 258, §§ 1–3, and the testimony of a federal officer who aided them was therefore properly received.

Anderson, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of New Hampshire; George F. Morris, Judge.

Harry Park was convicted of unlawfully transporting intoxicating liquor, in violation of the National Prohibition Act, and he brings error. Affirmed.

Charles Toye, of Boston, Mass. (Toye, Halligan & Murray, of Boston, Mass., on the brief), for plaintiff in error.

Raymond U. Smith, U. S. Atty., of Concord, N. H.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. On the 25th of April, 1923, the grand jury in the United States District Court for the District of New Hampshire returned and filed in court an indictment against the defendant (plaintiff in error), a resident of Boston, in the district of Massachusetts, charging that he, on the 8th day of February, 1923, at Portsmouth, in said district of New Hampshire, "without having received a permit from the Commissioner of Internal Revenue so to do, did then and there unlawfully transport from Boston into Portsmouth a certain quantity of intoxicating liquor, to wit, 68 gallons of

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

alcohol containing one-half of 1 per centum or more of alcohol by volume, fit for beverage purposes."

The indictment was based on section 6, tit. 2, of the National Prohibition Act of October 28, 1919 (Comp. St. Ann. Supp. 1923, § 10138½c). The defendant, having been arraigned on the 1st day of May, 1921, and pleaded not guilty, the case was set for trial May 8, 1923. On May 7, 1923, the defendant filed a motion for the return of the alcohol described in the indictment, alleging that it was seized by an officer of the United States without authority, from an automobile which was in the possession of the defendant, in violation of his rights under the Fourth and Fifth Amendments to the Constitution, because the seizure was not made by virtue of a search warrant or by due process of law. At the same time he filed a motion asking that the alcohol be suppressed as evidence and excluded at the trial. When the case was called for trial he presented the motions and requested that evidence be taken on each motion before the jury was impaneled. The court ordered a jury to be impaneled, stating that he would rule upon the motions upon hearing the testimony; that, if the evidence was not admissible, he would rule it out, order the liquor returned, and direct a verdict of not guilty, unless there was other evidence sustaining the indictment, and the defendant excepted.

In his opening statement the district attorney, among other things, said:

"The police will show you that in the Portsmouth police court the next day Mr. Park pleaded guilty to illegal possession of alcohol."

Counsel for the defendant objected to the statement as prejudicial, and that evidence thereof would not be admissible. The court thereupon instructed the jury that the district attorney was merely making an opening statement; that what he said was not testimony in the case, and, unless it was sustained by evidence from witnesses on the stand, they should pay no attention to it. The defendant excepted to the statement.

In the course of the trial the government offered in evidence a certified copy of the record of the proceedings in the Portsmouth police court on the morning succeeding the defendant's arrest, and offered to show by such record that the defendant then pleaded guilty to the illegal possession of intoxicating liquor. Objection being made, the evidence was excluded.

At the close of all the evidence the defendant entered a motion for a directed verdict, which was denied, subject to exception. The jury found the defendant guilty, and the case is here on his writ of error.

The errors assigned are: (1) That the court erred in denying defendant's motion for the return of the alcohol, on the ground that it had been seized without a warrant and had not been discovered prior to or at the time of the arrest of the defendant and the seizure of the alcohol; (2) that it erred in overruling the motion to exclude the alcohol as evidence, on the ground that it was illegally seized; (3) that it erred in overruling the defendant's objection to the statement of the district attorney in his opening to the jury; (4) that it erred in overruling defendant's objection to the introduction of evidence, through the wit-

ness Ellingwood, with reference to the alcohol that was taken from defendant's automobile after he was arrested and taken to the station house; (5) that it erred in overruling defendant's objection to the following question and answer: "Was it a common thing at that time to see a Massachusetts automobile at Portsmouth? A. No, sir;" and (6) that it erred in refusing to direct a verdict for the defendant at the close of all the evidence.

[1] The grounds on which the trial judge denied the defendant's motions for the return of the alcohol and for its exclusion from evidence are not given. It was a sufficient ground for the denial of the motion to return the alcohol that there was no evidence that it was in the possession of federal officers or any officer of the court, and, as it was not offered in evidence, it might be inferred that it was not in their possession. At any rate, the defendant's rights in this case were in no way harmed by the denial of either motion; the alcohol not having been offered or received in evidence. The defendant takes nothing by the first and second assignments of error.

[2] The third assignment relates to the statement of the district attorney in his opening to the jury to the effect that the defendant pleaded guilty to the charge of illegal possession of alcohol in the Portsmouth police court the next morning after his arrest. If this statement was improper, we do not think the defendant was harmed, as the court told the jury to disregard it, unless sustained by evidence, and, when evidence was offered in support of the statement, it was excluded.

[3] The main questions in the case are raised by the fourth assignment of error, wherein it appears that the court permitted evidence to be introduced through the witness Ellingwood, a federal officer, with reference to the alcohol that was taken from the defendant's automobile after he was arrested and taken to the police station. The same questions are raised by this assignment that would have been presented by the motion to suppress the alcohol as evidence, had it been offered in evidence; for, according to defendant's contention, both are based on the grounds that the alcohol was seized by an officer of the United States or by state or city police officers acting under direction of an officer of the United States; that the seizure was made without a search warrant or due process of law and was illegal; and that, the seizure being illegal, the alcohol, as well as the testimony as to its seizure, given by the witness Ellingwood, a federal officer, who is alleged to have participated in the seizure, was incompetent.

The competency of the testimony depended upon the determination by the trial judge of certain preliminary questions of fact; and his ruling admitting the testimony is to be upheld, if there was any evidence from which any one of the three following propositions could have been found: (1) That the seizure was made by the state or city officers, without the co-operation of the federal officer, in which case the liquor seized and the testimony given by the witness would have been competent on the trial of the defendant in this court, even though the state or city officers, in making the seizure, acted without a search warrant or without due process of law (Kirkley v. United States [C. C. A.]

283 Fed. 34; Kanellos v. United States [C. C. A.] 282 Fed. 461; Burdeau v. McDowell, 256 U. S. 465, 41 Sup. Ct. 574, 65 L. Ed. 1048, 13 A. L. R. 1159); or (2) that the seizure was made by the state or city officers with the aid and co-operation of the federal officer, and the state or city officers acted in pursuance of a local search warrant, or of some statute of the state authorizing the seizure; or (3) that the seizure was made by the federal officer alone, or with the assistance of the state officers, and the federal officer had a federal search warrant, or acted in pursuance of some statute of the United States authorizing the seizure (Gouled v. United States, 255 U. S. 298, 308, 309, 41 Sup. Ct. 261, 65 L. Ed. 647; Weeks v. United States, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177).

We think the evidence was not such as to justify the trial judge in finding that the seizure was made by the state or city officers without the co-operation of the federal officer. Therefore the situation called for by the first subdivision, supra, cannot be regarded as the ground upon which the trial judge based his ruling. There was, however, evidence from which it could have found that the seizure was made by the state or city officers with the assistance of the federal officer, and that the state or city officers undertook to act in pursuance of the laws of the state in making the seizure.

[4] It appears that the possession or transportation of intoxicating liquor is made prima facie illegal by the laws of the state. Laws N. H. 1917, c. 147, § 20, as amended by Laws N. H. 1919, c. 99, § 4. There was evidence that the defendant was arrested and taken to the Portsmouth police station by Officers Hewitt and Gray of the city police force. They testified that they arrested him at 10:20 p. m. and rode with him to the Portsmouth police station in his automobile, which he drove; that on arriving at the station Officer Hewitt remained outside with the car; that the defendant was taken into the station by Gray, where he was booked, searched, and locked up, the arrest having been made between sunset and sunrise (P. S. N. H. c. 250, § 4); that thereafter Police Officers Gray and Sullivan (houseman at the station), together with Officer Ellingwood, went to the automobile outside the station; that Ellingwood found the key to the back of the car attached to a key in the switch lock; that Hewitt unlocked the rear compartment of the car, and that all four participated in carrying the 68 cans of alcohol into the station, where it was turned over to the captain of the police. The evidence warranted the trial judge in finding that the defendant was arrested by the city police officers, who took him to the police station and locked him up as required by the laws of New Hampshire, the arrest having been made between sunset and sunrise (section 4, c. 250, P. S. N. H.), to await trial on a charge to be preferred against him within 24 hours from the time of committal (section 4, c. 250, supra), and that a trial was had the next morning; that the alcohol was seized by the city officers with the assistance of the federal officer, and was stored and kept by the city officers at the police station.

Had the defendant been returned before a federal commissioner, and the seized liquor held by or turned over to a federal officer for disposi-

tion by a federal court, there would be some ground for saying that the arrest and seizure were made by federal officers acting under federal authority. Flagg v. United States, 233 Fed. 481, 483, 147 C. C. A. 367. But such was not the case. As the evidence stands, the trial judge would have been warranted in finding that the seizure was by the city officers, aided therein by the federal officer. It is therefore to be assumed that he so found; but, as the seizure was made without a warrant, the further question is presented whether there was evidence disclosing a special situation, justifying the police officers of Portsmouth, under the laws of the state, in making the seizure, and that the alcohol was lawfully seized.

The Public Statutes of New Hampshire, c. 250, §§ 1, 3 and 4, provide:

"Section 1. By the word 'officer,' in this title, shall be intended any sheriff or deputy sheriff, mayor, or city marshal, constable, police officer, or watchman, or other person authorized to make arrests in a criminal case."

"Sec. 3. An officer, upon view of a crime or breach of the peace or offense against the police of towns, may arrest the offender, and forthwith carry him before the proper court or justice to answer for the offense.

"Sec. 4. If the arrest is made between sunset and sunrise, the person arrested may be committed to jail, to the house of correction, or other place provided for the detention of offenders, or be otherwise detained in custody not exceeding twenty-four hours, within which time he shall be discharged, or taken before a court or justice to answer for the offense."

See Crowley v. Hurd, 58 N. H. 75; also Laws N. H. 1917, c. 147, § 57, as amended by section 10, c. 99, Laws N. H. 1919.

In the Public Statutes of New Hampshire, c. 251, § 1, subd. 6, provision is made for the issuing of a warrant for the search and seizure of specific classes of forfeited property and of any property "the subject-matter of any offense not herein specially mentioned." And by section 6 of said chapter it is provided:

"Sec. 6. An officer who shall find any implement, article, or thing, made, kept, used, or designed to be used, in violation of law, or in the commission of an offense, in the possession of or belonging to a person arrested or liable to be arrested for such offense or violation of law, shall bring such implement, article, or thing before the justice or court having jurisdiction of the offense, who shall make such order respecting its custody or destruction as justice may require."

By Public Statutes of New Hampshire, c. 258, §§ 1, 2 and 3, further provision is made for the seizure and disposition of forfeited property, in addition to that provided by section 6, c. 251.

In O'Connor v. Bucklin, 59 N. H. 589, 591, 592, the court in considering the meaning of the words "upon view" as used in section 3, c. 250, above quoted said:

" 'Any officer, upon view of any crime or breach of the peace or offense against the police of towns, may arrest the offender, and forthwith carry him before the proper court or justice to answer for the offense.' G. L. c. 254, § 3. By the construction established by long and uniform understanding and practice, this statute authorizes an arrest by any officer on view of any criminal offense for which the offender is liable to arrest on a warrant. And by the construction established in the same manner the statute re-enacts the common-law rule of this state, which authorizes an arrest by an officer, without a warrant, in good faith, for a proper purpose, and on reasonable grounds.

On some subjects of this nature, by long usage and common consent, in this state, some of the rules of the common-law of England have been modified, and reasonably conformed to the public safety and welfare. Waldren v. Berry, 51 N. H. 136. The view spoken of in the statute is such a view as shows legal cause for an arrest, and reasonable ground to believe the plaintiff guilty of a criminal offense was legal cause for the defendant's obtaining a warrant against him, or arresting him without a warrant.

" * * * The statute was not intended to disable the police, and deprive the community of its rightful protection, by deterring officers from the performance of their apparent duty. It means, not that an officer commits a trespass by arresting an innocent but dangerous insane person, or an innocent person apparently guilty, but that the officer's view may, like other sources of information, furnish reasonable ground to believe an arrest ought to be made."

In other words, it was held that an officer might take into consideration what he sees or learns through his senses at the time and also "other sources of information"; that if such sources of information furnish reasonable ground to believe an arrest ought to be made, and he acts in good faith, he is justified in making the arrest.

In State v. Spirituous Liquors, 68 N. H. 47, 49, 40 Atl. 398, the court, in considering section 6, c. 251, and sections 1 and 2, c. 258, of the Public Statutes of New Hampshire, said that "these sections authorize the seizure of property kept in violation of law, but do not authorize a search." The state court has never interpreted the meaning of the word "find" as used in section 6, c. 251; but by uniform understanding and practice in New Hampshire through a long series of years the language employed in this section (section 6, c. 251) has been regarded as meaning the same as that used in section 3, c. 250, and as authorizing the seizure of a thing kept in violation of law, when in the possession of or belonging to a person arrested for such violation of law; and that the officer making the seizure will be protected, if the information obtained at the time through his senses, together with other sources of information, furnishes reasonable ground to believe that a violation of law is being committed, the officer acting in good faith. See, also, Closson v. Morrison, 47 N. H. 482, 93 Am. Dec. 459; and particularly La Chance v. Railway, 79 N. H. 291, 292, 294, 109 Atl. 720, 721, where the court was construing section 32, c. 160, of the Public Statutes of New Hampshire, which provides:

"Sec. 32. Railroad police officers may preserve order within and about the premises and upon the cars of the corporation upon whose petition they were appointed; they may arrest without a warrant, * * * all persons committing thereon any offense known to the laws of the state, and may take the persons so arrested to the nearest police station, or other place of lawful detention in the county where the offense was committed."

In construing this statute the court said:

"The statute was passed to provide an immediate remedy in a place where it would be practically impossible to secure a warrant. In authorizing a railroad police officer to arrest without a warrant persons committing upon railroad cars 'any offense known to the laws of the state' the Legislature must have had in mind the general authority conferred upon police officers to arrest without warrant upon view of crime. P. S. c. 250, §§ 3, 4. 'The view spoken of in the statute is such a view as shows legal cause for an arrest, and reasonable ground to believe the plaintiff guilty of a criminal offense was

legal cause for * * * arresting him without a warrant.' O'Connor v. Bucklin, 59 N. H. 589, 591."

Statutes authorizing seizure and containing provisions similar to those contained in section 6, c. 251 and chapter 258 of the Public Statutes of New Hampshire exist in Vermont, Maine, and Massachusetts, and have been given a like construction. See section 2 of No. 43, Acts of Vermont of 1882; State v. O'Neil, 58 Vt. 140, 162, 2 Atl. 586, 56 Am. Rep. 557; section 39, c. 27, Revised Statutes of Maine; State v. McCann, 59 Me. 383; State v. Le Clair, 86 Me. 522, 30 Atl. 7; State v. Bradley, 96 Me. 121, 51 Atl. 816; chapter 100, § 86, Revised Laws Mass. 1902; Mason v. Lothrop, 7 Gray (Mass.) 354, 358; Kent v. Willey, 11 Gray (Mass.) 368, 372, 373; Reed v. Adams, 2 Allen (Mass.) 413, 415, 416. See, also, 1 Stat. at Large, p. 43, §§ 23 and 24, and Boyd v. United States, 116 U. S. 616, 623, 6 Sup. Ct. 524, 29 L. Ed. 746.

[5] Section 26, title 2, of the National Prohibition Act of 1919 (Comp. St. Ann. Supp. 1923, § 10138½mm) contains a provision authorizing seizure without a warrant under circumstances similar to section 6, c. 251, of the Public Statutes of New Hampshire. It provides:

"Sec. 26. When the commissioner, his assistants, inspectors, or any officer of the law shall discover any person in the act of transporting in violation of the law, intoxicating liquors in any wagon, buggy, automobile, water or air craft, or other vehicle, it shall be his duty to seize any and all intoxicating liquors found therein being transported contrary to law. Whenever intoxicating liquors transported or possessed illegally shall be seized by an officer he shall take possession of the * * * automobile, * * * and shall arrest any person in charge thereof."

The authority to seize, without a warrant, given by this statute, is limited to liquors being transported in any vehicle contrary to law, upon discovery by an officer of a person in the act of so transporting. In construing this statute, the words "shall discover any person in the act of transporting" have been construed differently in the different Circuit Courts of Appeal and District Courts throughout the country. See Lambert v. United States (C. C. A. 9th Cir.) 282 Fed. 413, 414, 417; United States v. Kaplan (D. C. Ga.) 286 Fed. 963, 973; United States v. Rembert (D. C. Tex.) 284 Fed. 996, 1001, 1006; United States v. Hilsinger (D. C. Ohio) 284 Fed. 585, 588; Elrod v. Moss (C. C. A. 4th Cir.) 278 Fed. 123; Kathriner v. United States (C. C. A. 9th Cir.) 276 Fed. 808; United States v. Bateman (D. C. Cal.) 278 Fed. 231; Snyder v. United States (C. C. A. 4th Cir.) 285 Fed. 1, 2, 4; McBride v. United States (C. C. A. 5th Cir.) 284 Fed. 416, 419; United States v. Slusser (D. C. Ohio) 270 Fed. 818, 820, 821.

We think, however, the true construction and meaning of the statute is that if an officer, at the time of the seizure, has ascertained facts, through the exercise of his senses of sight, smell, etc., and from other sources of information, that would justify a reasonably prudent man in believing that the crime of transporting liquor in a vehicle contrary to law was being committed in his presence, a seizure would be authorized, and that the seizure in this case would have been authorized had it been made by the federal officer. By this we do not mean that a federal officer, acting under this statute, can make an arrest and seizure

on mere suspicion, but that he must have ascertained at the time facts that would justify a prudent man in believing that a crime was being committed in his presence.

But with the proper construction of section 26 of the National Prohibition Act we are not concerned, as the seizure in this case was made by state officers under the authority of local statutes assisted by the federal officer, and it only remains for us to consider, on this branch of the case, whether a situation was presented from which it could be found that the police officers of Portsmouth, at the time the alcohol was seized, had knowledge of facts acquired through their senses, and other sources of information, which would warrant them as reasonable men in believing that Park was then in the unlawful possession of alcohol, for, if they did, the seizure was legal, and the evidence given by Ellingwood was competent, even though he participated with the police officers in making the seizure. It is only when a federal officer participates in an *illegal* seizure that the thing seized or his testimony in relation to it is incompetent. See cases supra.

[6] There was evidence that the car was seen by the officers when it came into Portsmouth about 10:20 in the evening; that it was a Cadillac roadster, bearing a Massachusetts number plate; that this fact, the conditions of travel at the time (there being so much snow few machines could get through from Massachusetts), and the circuitous route taken by the car after arriving in town attracted the attention of the officers; that while the car was standing in front of the National Hotel, with no one in it, they shook the car; that on doing so the movement of cans and a gurgling sound could be heard in the car; that the car sagged down pretty well on the rear springs; and that Park told Gray while riding to the station with him and Hewitt that he had alcohol in the car, which statement was uncontradicted. This evidence discloses that at and before the time the seizure took place the officers making the seizure had information, acquired through their senses of sight and hearing and from other sources, that Park had liquor in his possession in the car, the possession of which was in violation of the laws of the state, and warranted them as reasonable men in believing that it was so possessed. The seizure was lawful, and the testimony was properly received in evidence.

The fifth assignment has not been argued or briefed by the defendant, and we regard it as waived.

The motion for a directed verdict was properly denied, as there was abundant evidence to go to the jury.

The judgment of the District Court is affirmed.

ANDERSON, Circuit Judge (dissenting). Neither with the majority opinion nor with the result reached can I accord. My brethren seem to me to misinterpret the record and to misapply the law. I think the case falls plainly within the rule laid down in the Weeks Case, 232 U. S. 383, 398, 34 Sup. Ct. 341, 346 (58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177), that the evidence admitted was obtained by "an official of the United States acting under color of his office in direct violation of the constitutional rights of the" citizen.

A brief statement of the controlling facts will be enough to show how gross was the disregard of principles of personal liberty, supposed to be established beyond peradventure generations ago in all free countries.

At about 10:30 in the evening of February 8, 1923, Federal Prohibition Officer Ellingwood saw, coming into Portsmouth, a Cadillac roadster with a Massachusetts license number, carrying two men. The men were sober. The car was being driven in an orderly and usual way, well within the speed limit. The men alighted and went into a hotel. Ellingwood noted that the rear of the car sagged, shook the car, and thought it gurgled as though it had liquor or cans containing liquor. Parenthetically, it may be noted that such gurgling would be far more likely to come from a partially empty gasoline tank than from cans of alcohol, which, as the event showed, were actually in this car. When the men came out of the hotel, Ellingwood asked Park if it was his car. Park said it was. Ellingwood then asked him what he had in the car, and Park said he had nothing. Ellingwood thereupon said he wished to search it. Park objected, and asked if Ellingwood had a search warrant; to which the latter replied in the negative. After several refusals by Park to produce the keys and permit the search of his car, this federal officer, acting in collaboration with Portsmouth police officers, whose help he had invoked, arrested Park and his companion, one Leary, and took them and Park's automobile to the police station. Either on the way to the station, or after reaching it (the evidence states it both ways), Park admitted that he had alcohol in the car. At the police station Park's hands were pinioned behind his back, and against his objection his pockets were searched, and he was then locked up. His companion was treated in like fashion. After such arrest and search of Park and his companion, and seizure of his automobile, the keys to the automobile were found in the switch lock; the car was then unlocked, and for the first time the officers made an actual discovery of the presence therein of alcohol.

It is indisputable that the proceedings were initiated and throughout substantially controlled by Ellingwood, the federal officer. The responsibility for this proceeding rests on federal, not upon New Hampshire, officials. I do not mean that I concur in the interpretation made by my brethren of the New Hampshire statutes and cases; apart from one or two rather loose dicta, I think the law there accords with the rulings in all jurisdictions where common law principles obtain. But on the facts in this case, to hold, as the majority hold, that the defendant is not entitled to the protection of the Fourth Amendment, is, as laid down by Mr. Justice Holmes in Silverthorne v. United States, 251 U. S. 385, 392, 40 Sup. Ct. 182, 183, 64 L. Ed. 319, to reduce "the Fourth Amendment to a form of words"; or, as put by Mr. Justice Day in Weeks v. United States, 232 U. S. 383, 393, 34 Sup. Ct. 341, 344 (58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177), if evidence obtained on such arrest and search both of the person and automobile can be "used in evidence against a citizen accused of an offense, the protection of the Fourth Amendment, declaring his right to be secure against such searches and seizures, is of no value, and,

so far as those thus placed are concerned, might as well be stricken from the Constitution."

Burdeau v. McDowell, 256 U. S. 465, 41 Sup. Ct. 574, 65 L. Ed. 1048, 13 A. L. R. 1159, lends no support to the majority opinion. But the vigorous dissent of Justices Brandeis and Holmes warns us against extension by judicial construction of the dangerous practice of law enforcement by lawless or immoral methods.

The principles involved are of sufficient importance to warrant brief analysis of the situation and reference to some of the chief authorities. Of course, the offense of illegal transportation of liquor is a continuing misdemeanor; it is no felony. Taking the facts in their aspect most favorable to the government's contention, it is clear that the federal officer and the assisting Portsmouth police officers had, when they arrested Park and seized his automobile, no more than reasonable ground for belief that Park was illegally transporting liquor in that automobile. They did not see, taste, or smell it, or otherwise discover it by their senses; they were not told of its presence by any one claiming knowledge; they did not act on information. Park denied the offense. The arrest preceded everything except (at most) reasonable ground to believe (perhaps only to suspect) that Park was then and there guilty of the misdemeanor of illegally transporting intoxicating liquor.

Now, whatever may have formerly been the rule (see Adams v. New York, 192 U. S. 585, 24 Sup. Ct. 372, 48 L. Ed. 575), it is now settled that evidence obtained through an illegal arrest, search, or seizure by or with the assistance of federal officials is inadmissible (Gouled v. United States, 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 647; Amos v. United States, 255 U. S. 313, 41 Sup. Ct. 266, 65 L. Ed. 654; Silverthorne v. United States, 251 U. S. 385, 40 Sup. Ct. 182, 64 L. Ed. 319; Giles v. United States (C. C. A.) 284 Fed. 208; Snyder v. United States (C. C. A.) 285 Fed. 1; United States v. Slusser [D. C.] 270 Fed. 818; Murby v. United States, 293 Fed. 849, decided by this court on December 11, 1923).

The gist of this case, then, is whether reasonable ground to believe was enough to justify Federal Officer Ellingwood and his assisting police officers in arresting Park for a misdemeanor, not a breach of the peace, and in seizing and later searching his automobile and thereafter seizing the alcohol therein—all without warrant, either for the arrest or for the seizure and subsequent search.

First, as to the common law: In Kurtz v. Moffitt, 115 U. S. 487, 498, 6 Sup. Ct. 148, 152 (29 L. Ed. 458), Mr. Justice Gray said:

"By the common law of England, neither a civil officer nor a private citizen had the right without a warrant to make an arrest for a crime not committed in his presence, except in the case of felony, and then only for the purpose of bringing the offender before a civil magistrate. 1 Hale, P. C. 587–590; 2 Hale, P. C. 76–81; 4 Bl. Com. 292, 293, 296; Wright v. Court, 6 D. & R. 623; s. c., 4 B. & C. 596. No crime was considered a felony which did not occasion a total forfeiture of the offender's lands, or goods, or both. 4 Bl. Com. 94, 95; Ex parte Wilson, 114 U. S. 417, 423."

The same doctrine is repeated in Elk v. United States, 177 U. S. 529, 534, 20 Sup. Ct. 729, 731 (44 L. Ed. 874), where Mr. Justice Peckham says:

"So an officer, at common law, was not authorized to make an arrest without a warrant, for a mere misdemeanor not committed in his presence. 1 Arch. Crim. Pr. & Pl. (7th Am. Ed.) 103, note (1); also page 861 and following pages; 2 Hawk. P. C. 129, § 8; 3 Russell on Crimes (6th Ed.) 83, 84, 97; 1 Chitty's Crim. L. *15; 1 East, P. C. c. 5, p. 328; Derecourt v. Corbishley, 5 E. & B. 188; Fox v. Gaunt, 3 B. & Ad. 798; Reg. v. Chapman, 12 Cox's Crim. Cas. 4: Rafferty v. The People, 69 Ill. 111; s. c., on a subsequent writ, 72 Ill. 37."

Commonwealth v. Wright, 158 Mass. 149, 158, 33 N. E. 82, 85 (19 L. R. A. 206, 35 Am. St. Rep. 475) was a controversy arising out of the arrest by a district police officer of certain persons charged with having short lobsters. The court, by Field, C. J., said:

"It is suggested that the statutory misdemeanor of having in one's possession short lobsters with intent to sell them is a continuing offense, which is being committed while such possession continues, and that therefore an officer who sees any person in possession of such lobsters with intent to sell them can arrest such person without a warrant, as for a misdemeanor committed in his presence. We are of opinion, however, that for statutory misdemeanors of this kind, not amounting to a breach of the peace, there is no authority in an officer to arrest without a warrant, unless it is given by statute. McLennon v. Richardson, 15 Gray, 74: Commonwealth v. O'Connor, 7 Allen, 583: Scott v. Eldridge, 154 Mass. 25; People v. McLean, 68 Mich. 480: 1 Bennett & Heard's Leading Cas. 201; 1 Bish. Crim. Proc. (3d Ed.) §§ 166–183; Commonwealth v. Tobin, 108 Mass. 426. The Legislature has often empowered officers to arrest without a warrant for similar offenses, which perhaps tends to show that, in its opinion, no such right exists at common law. See, for example, St. 1886, c. 276, § 8; Pub. St. c. 100, § 43; chapter 203, §§ 100, 104; chapter 207, §§ 41 and 43."

Compare G. L. Mass. c. 138, § 75.

In Kellam's Case, 55 Kan. 700, 41 Pac. 960, it was held that a statute conferring authority upon police officers to arrest for misdemeanors not committed in their presence was unconstitutional. The court said (55 Kan. 702, 41 Pac. 961):

"The powers of officers to make arrests have been extended to some extent by statutes but it is generally held that officers cannot be constitutionally clothed with authority to arrest without warrant for minor offenses not committed in their presence or view. Pinkerton v. Verberg, 78 Mich. 573; Robison v. Miner, 68 Id. 549; Shanley v. Wells, 71 Ill. 78; Jamison v. Gaernett, 10 Bush. 221; The State v. Freeman, 86 N. C. 683; Doering v. The State, 49 Ind. 56; 11 Cent. L. J. 331; 1 Am. & Eng. Encyc. of Law, 732; 7 Am. & Eng. Encyc. of Law, 675.

"In considering the question of an officer making an arrest without a warrant for a misdemeanor committed at a past time, the Supreme Court of Michigan said:

"'Any law which would place the keeping and safe conduct of another in the hands of even a conservator of the peace, unless for some breach of the peace committed in his presence or upon suspicion of felony, would be most oppressive and unjust, and destroy all the rights which our Constitution guarantees. These are rights which existed long before our Constitution, and we have taken just pride in their maintenance, making them a part of the fundamental law of the land.' Pinkerton v. Verberg, supra.

"In the same case it was said:

"'If persons can be restrained of their liberty and assaulted and imprisoned under such circumstances, without complaint or warrant, then there is no limit to the power of a police officer.'"

See, also, State v. Gleason, 32 Kan. 245, 4 Pac. 363; Cooley's Const. Lim. 364, and notes.

In 5 C. J. 401, § 31, it is laid down:

"It is the general rule that an officer has no authority whatever to arrest for a misdemeanor without a warrant, unless the offense is committed in his presence; nor can he arrest without a warrant for a misdemeanor which does not amount to a breach of the peace, although committed in his presence."

As to what constitutes "in the presence of," see 5 C. J. p. 416, § 45. This term has been held synonymous with "immediate knowledge." See Peidmont Hotel v. Henderson, 9 Ga. App. 672, 72 S. E. 51. See, also, People v. Johnson, 86 Mich. 175, 48 N. W. 870, 13 L. R. A. 163 and notes, 24 Am. St. Rep. 116.

It is unquestionable that, on common-law doctrines, the proceedings in Park's Case cannot be justified.

Has the common law rule been changed by statute? Section 26 of the Prohibition Act, so far as now pertinent, reads:

" When * * * any officer of the law shall discover any person in the act of transporting in violation of the law, intoxicating liquors in any * * * automobile, * * * it shall be his duty to seize any and all intoxicating liquors found therein being transported contrary to law. Whenever intoxicating liquors transported or possessed illegally shall be seized by an officer he shall take possession of the * * * automobile, * * * and shall arrest any person in charge thereof."

I cannot construe the words "shall discover in the act," etc., as meaning "shall have reasonable cause to suspect or believe." To discover means to find out by sense perception, not to infer from a chain of evidence, or to believe on the basis of information received. Nor does this statute warrant arrest of the person in charge, before discovery, by sense perception, of the illegal transportation.

The section contemplates: (1) Discovery of the offense, that is, the commission of the misdemeanor in the presence of the officer; (2) seizure of the outlawed liquor and the vehicle; (3) the arrest of the person in charge thereof.

In this case, the order was (1) Park's arrest on mere suspicion, or at most reasonable belief; (2) seizure of the automobile without a search warrant and against Park's protest; (3) and, as the result of Park's arrest and seizure and search of his automobile, discovery of the illegal transportation.

My views accord with those expressed by the Circuit Court of Appeals for the Fourth Circuit in Snyder v. United States, 285 Fed. 1, where the rule was stated as follows:

"That an officer may not make an arrest for a misdemeanor not committed in his presence, without a warrant, has been so frequently decided as not to require citation of authority. It is equally fundamental that a citizen may not be arrested on suspicion of having committed a misdemeanor and have his person searched by force, without a warrant. * * * If, therefore, the arresting officer in this case had no other justification for the arrest than the mere suspicion that a bottle, only the neck of which he could see protruding from the pocket of defendant's coat, contained intoxicating liquor, then it would seem to follow without much question that the arrest and search, without first having secured a warrant, were illegal. And that his only justification was his suspicion is admitted by the evidence of the arresting officer himself. If the bottle had been empty or if it had contained any one of a dozen innoxious liquids, the act of the officer would, admittedly, have been an unlawful invasion of the personal liberty of the defendant. That it happened

in this instance to contain whisky, we think, neither justified the assault nor condemns the principle which makes such an act unlawful."

Even in the opinion of Circuit Judge Woods, who, on the particular facts of that case dissented, propositions, conclusive against the government in this case, are stated:

"When an officer is authorized by statute to arrest for a misdemeanor committed in his presence or on discovering a person committing a misdemeanor, to justify arrest the officer must have personal knowledge acquired at the time through his hearing, sight, or other sense of the present commission of the crime by the accused. But this does not preclude the idea that the requisite knowledge may be based on a practically certain inference drawn by a reasonable mind from the testimony of the senses. An offense is in the view of the officer when his senses afford him knowledge that it is being committed. Elrod v. Moss (C. C. A. 4th Circuit) 278 Fed. 130; Piedmont Hotel Co. v. Henderson, 9 Ga. App. 672, 72 S. E. 51; United States v. Borkowski (D. C.) 268 Fed. 408, 412; 5 C. J. 416; 84 Am. St. Rep. 686, note. Whether the offense was committed in the presence of the officer in this sense is primarily a question for the trial judge, and his finding should not be disturbed on appeal, unless it is without support in the evidence.

"But the arrest and search were illegal, and the testimony obtained thereby incompetent, because the federal prohibition officer had no authority to arrest without a warrant for the misdemeanor of having intoxicating liquor in his possession.

"At common law a peace officer was not authorized to make an arrest without warrant for any misdemeanor committed in his presence, except a breach of the peace. State v. Lutz, 85 W. Va. 330, 101 S. E. 434, 439; 5 C. J. 401, and cases cited."

If Congress had intended by this statute (section 26, supra) to authorize arrests without warrant on a reasonable belief or suspicion that a misdemeanor was then and there being committed in the presence of the officer, it would have used the apt and familiar words to state that purpose. The many trained lawyers in Congress were familiar with the doctrine laid down in Sarah Way's Case, 41 Mich. 304, 1 N. W. 1023, by Mr. Justice Campbell in the following words:

"It must not be forgotten that there can be no arrest without due process of law. An arrest without warrant has never been lawful, except in those cases where the public security requires it; and this has only been recognized in felony, and in breach of the peace committed in presence of the officer. Quinn v. Heisel, 40 Mich. 576; Drennan v. People, 10 Mich. 169."

Compare Commonwealth v. Carey, 12 Cush. (Mass.) 246, 252; Jamison v. Gaernett, 10 Bush (Ky.) 221; State v. Slamon, 73 Vt. 212, 50 Atl. 1097, 87 Am. St. Rep. 711; North v. People, 139 Ill. 81, 28 N. E. 966; Commonwealth v. Wright, supra.

Nothing could be more idle than rhetoric about making a "man's house his castle," if in order to get evidence of a misdemeanor the government is to countenance arrests and search of persons and search and seizure of automobiles, without any warrant whatever, in the very teeth of the Fourth Amendment. Compare the fourteenth article of the Massachusetts Bills of Rights, drawn by John Adams, who, as a young man, had listened to Otis arguing the case against the writs of assistance. Why trouble ourselves about informalities in the issuing and service of search warrants, if we are to train our police forces, on

suspicion or belief, to arrest without any warrants our citizens, pinion their arms, search their pockets, seize their automobiles, and thus obtain evidence of the commission of a mere misdemeanor. Such decisions as this court has just made in the Murby Case, supra, are worthless, if such use of blanket procedure, without warrant, is to prevail.

We must not overlook the tremendous extent of the powers vested in police officers, if they are to be authorized to arrest, without warrant, for misdemeanors not breaches of the peace, and not committed in their actual presence. Under such circumstances, a policeman is made, in effect, prosecutor, judge, jury and executioner. No judge has any comparable power. For, arrest and imprisonment are, for all practical purposes, a severe punishment. Arrest alone involves, to the self-respecting citizen, intense humiliation, publicity, disgrace, mental suffering, injury to reputation, pain to family and friends, frequently additional great physical discomfort. And a citizen wrongfully arrested, whether imprisoned or not, has no real remedy. Suit for false arrest and imprisonment is generally but an aggravation of the damage done. This is generally recognized; such suits are too rare and too futile to operate as any real check on police lawlessness. Only the courts can make and keep our police forces law-abiding.

If we consider the situation from the standpoint of the guilty, even in such case, public arrest, perhaps followed by imprisonment under the mere mandate of a police officer, is a disproportionate punishment for such statutory misdemeanor. Most modern Legislatures have recognized this by providing for issuing a summons, or for proceeding on an information rather than by arrest. The real ground for such legislation is that it was seen that an arrest, in and of itself, was a punishment too severe for the offense committed.

Lawlessness by law-enforcing officials cuts up to the roots government that rests upon the consent of the governed.

This extension of police powers is being made by judicial ruling, not by congressional enactment, at a time when the task of organizing and maintaining an honest, law-abiding, and generally competent police force is infinitely harder than the country ever before faced. Not at any time or in any place, unless in some of the red-light districts in our cities, was the problem of getting and keeping an honest police force so difficult as now. There are disturbing indications of blackmail, bribery, and corruption, as a result of the Prohibition Amendment. The situation is not likely in this respect to improve. For years, if not permanently, we shall inevitably have a large number of policemen or prohibition officers, however they be named, unfit for their jobs. —either out-and-out blackmailers, or ready to yield to the temptation of bribery. To permit arrest, search, and seizure without warrants, will tremendously increase the arrogance, the opportunities for blackmail, and the temptations to yield to bribery. Such methods will increase, not decrease, the difficulties of prohibition enforcement.

Nor should it be overlooked that alcohol is not the only thing that intoxicates. Power is, to the average human being, at least as intoxicating as alcohol. Historically, our Bills of Rights are limitations upon authority vested by governments in officials. These guaranties of per-

sonal liberty were attempts by our forefathers to protect citizens against the abuses growing out of the intoxication from official power. They were wise and necessary precautions. I think they should be maintained. Cf. Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746; Entick, etc., v. Carrington, 19 How. St. Tr. 1030.