## GARSKE v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. September 2, 1924.)

No. 6495.

1. **Criminal law** ⊂⇒394, 562—**Evidence obtained by unconstitutional use of search warrant not admissible.**

Evidence obtained by an unconstitutional use of search warrants is not admissible, and convictions of crime so obtained must be reversed.

2. **Arrest** ⊂⇒71—**Searches and seizures** ⊂⇒7—**Constitutional provision has no reference to search of person after arrest.**

The provision of Const. Amend. 4, against searches and seizures has reference to general searches for the purpose of obtaining evidence, and has no reference to evidence obtained from the person after legal arrest in a proper case, with or without warrant.

**3. Arrest ⊕63(4)—Officer, having probable cause to believe a misdemeanor is being committed in his presence, may arrest without warrant.**

Duly authorized peace officers may make an arrest for a crime which they have reasonable cause to believe is being committed in their presence, though it be a misdemeanor.

**4. Arrest ⊕63(4)—What constitutes "probable cause."**

The "probable cause" which will justify arrest for a misdemeanor without a warrant must be a judgment based on personal knowledge acquired at the time through the senses, or inferences properly to be drawn from the testimony of the senses.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Probable Cause.]

**5. Arrest ⊕63(4), 71—Arrest and search without warrant not justified by mere suspicion.**

Mere suspicion is not enough to justify arrest without a warrant for a misdemeanor, and a search by force of the person so arrested.

**6. Arrest ⊕63(3)—When offense is committed in "presence of officer."**

An offense is committed in the presence of an officer when his senses afford him knowledge that such is the fact.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Presence.]

**7. Searches and seizures ⊕3—Seizure on mere suspicion not justified by confirmation of suspicion.**

If a seizure is based on a mere suspicion, and the facts do not justify an arrest, the subsequent discovery by an examination of the evidence secured by the seizure that the suspicion was well founded is not sufficient to make what was unlawful at its commencement a lawful search.

**8. Arrest ⊕63(4), 71—Criminal law ⊕395—Arrest and search of defendant without warrant held legal, and evidence obtained admissible.**

While prohibition agents were searching a public place under a search warrant, defendant entered through a rear door carrying a package, and when signaled by the proprietor started out through the front door. The package was wrapped in thin paper, and showed the outlines of two whisky bottles. He refused to stop on demand of one of the agents, but was followed and arrested outside, and the package seized and found to contain whisky. *Held*, that the arrest and seizure were justified and lawful, and that the evidence seized was admissible against him.

In Error to the District Court of the United States for the District of Minnesota; Page Morris, Judge.

Criminal prosecution by the United States against Leo Garske. Judgment of conviction, and defendant brings error. Affirmed.

H. Stanley Hanson, of Minneapolis, Minn. (George R. Smith, of Minneapolis, Minn., on the brief), for plaintiff in error.

Lafayette French, Jr., U. S. Atty., and George A. Heisey, Asst. U. S. Atty., both of St. Paul, Minn.

Before KENYON, Circuit Judge, and AMIDON and SCOTT, District Judges.

KENYON, Circuit Judge. Plaintiff in error was tried and convicted in the District Court of Minnesota, Fourth Division, upon an information in two counts—the first charging him with being willfully, unlawfully, and knowingly in possession of certain intoxicating liquor; the second, with willfully, unlawfully, and knowingly transporting such intoxicating liquor without having a permit from the Commissioner of Internal Revenue of the United States so to do, said possession and transportation being in violation of the provisions of the Act of Congress of October 28, 1919, known as the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.). The conviction was upon both counts.

Briefly the facts are that a warrant had been issued for the search of a certain building known as No. 9 Main Street Northeast, in the city of Minneapolis. While the search was in progress plaintiff in error appeared in the room being searched, with a package under his arm, which, from its appearance, caused the prohibition officers to believe contained bottles of whisky. The soft drink parlor where the search was being made was operated by one Frank Johnson. One of the prohibition agents observed plaintiff in error as he entered the soft drink parlor through the rear door, bearing the package, which showed plainly the outline of two pint bottles. Johnson made some motions to plaintiff in error, causing him to start toward the front door. One of the prohibition agents called to another agent to stop him, which he attempted to do, but plaintiff in error ran toward the front door, and continued running until the pursuing prohibition agent caught him on the sidewalk outside of the building, took the bottles from him, tore the paper off, saw the Warwick whisky labels thereon, and brought him back into the soft drink parlor.

Following the procedure approved by the Supreme Court in Weeks v. United States, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177, a motion to quash the information was filed, claiming that the allegations therein were founded on evidence obtained by unlawful search and seizure, and asking a return of the property. The court refused to quash the information, and refused to order the return of the property. Reliance

for evidence as to the intoxicating liquor was the seized liquor.

[1] There was no warrant to search the person of plaintiff in error, nor was there a warrant for his arrest. No question is raised as to the authority of the prohibition agents to make the arrest, and the only question presented is the alleged violation of the Fourth Amendment to the Constitution by the seizure of property in the possession of plaintiff in error, and the subsequent use thereof as evidence in claimed violation of the Fifth Amendment to the Constitution. The proposition is not open to argument that evidence obtained by an unconstitutional use of search warrants is not admissible, and convictions of crime so obtained must be reversed. Gouled v. United States, 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 647; Amos v. United States, 255 U. S. 313, 41 Sup. Ct. 266, 65 L. Ed. 654; Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746.

It is argued by plaintiff in error that the search and seizure were not made pursuant to, or in compliance with, any provision of the National Prohibition Act; that section 26 of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½mm), providing, "When the commissioner, his assistants, inspectors, or any officer of the law shall discover any person in the act of transporting in violation of the law, intoxicating liquors in any wagon, buggy, automobile, water or aircraft, or other vehicle, it shall be his duty to seize any and all intoxicating liquors found therein being transported contrary to law," does not apply to transportation by one on his person, citing in support thereof United States v. Crossen (D. C.) 264 Fed. 459. Said section 26 applies apparently only to liquor being transported in "any wagon, buggy, automobile, water or aircraft, or other vehicle." No claim is made that this case is governed by said section and no necessity arises for our determination of any question arising thereunder.

The theory on which the government alleges the seizure was proper, is not based on section 26 of the National Prohibition Act, but rests on the general doctrine that the arrest and search of plaintiff in error were justified by a reasonable and honest belief on the part of the officers making such arrest, search, and seizure, that a crime was being committed in their presence, viz. the misdemeanors described in the two counts of the indictment.

[2] It is no violation of the Fourth Amendment to the Constitution to search one lawfully arrested for a crime, and to take from him the instrumentalities or evidences of the crime. The constitutional provision referred to against search and seizure has reference to general searches for the purpose of obtaining evidence, and has no reference to evidence obtained from the person after legal arrest in a proper case with or without warrant. In Weeks v. United States, 232 U. S. 383, 392, 34 Sup. Ct. 341, 344 (58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177), the Supreme Court said that the right is always recognized "to search the person of the accused when legally arrested, to discover and seize the fruits or evidences of crime."

In Ex parte Morrill (C. C.) 35 Fed. 261, the court discusses the Fourth Amendment to the Constitution and says that it never was intended to prevent an arrest by a peace officer for a crime committed in his presence. 2 Ruling Case Law, 446–458; United States v. Rembert (D. C.) 284 Fed. 996.

If the arrest of plaintiff in error here was justified and legal, then the taking of the liquor from him was not a violation of the Fourth Amendment, nor the use of it in evidence a violation of the Fifth Amendment. The liquor was one of the instrumentalities of the crime charged, and by section 25 of the National Prohibition Act (section 10138½m) is put in the same category as gambling instruments, burglar tools, counterfeit money, obscene literature, and other outlawed articles. A duly authorized officer in case of a legal arrest had the right to seize the same, as he would have the right to seize the above designated articles, if found on a defendant lawfully arrested. Giles v. United States (C. C. A.) 284 Fed. 208; Park v. United States (C. C. A.) 294 Fed. 776; Gouled v. United States, 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 647; Gandreau v. United States, 300 Fed. 21 (opinion filed First Circuit July 15, 1924). The determinative question in this case, therefore, is whether or not the arrest of plaintiff in error was a legal arrest.

[3–5] It is the well-established doctrine now throughout the United States that for a crime, which they have probable cause to believe is being committed in their presence, though it be a misdemeanor, duly authorized peace officers may make arrest without a warrant. The probable cause which will justify arrest for a misdemeanor without a warrant must be a judgment based on per-

sonal knowledge acquired at the time through the senses, or inferences properly to be drawn from the testimony of the senses. Mere suspicion is not enough to justify arrest without a warrant for a misdemeanor and a search by force of the person so arrested.

[6] The courts very generally hold that an offense is committed within the presence of an officer when his senses afford him knowledge that such is the fact. O'Connor v. United States (D. C.) 281 Fed. 396; United States v. Borkowski (D. C.) 268 Fed. 408; Elrod v. Moss (C. C. A.) 278 Fed. 123; Lambert v. United States (C. C. A.) 282 Fed. 413.

There must be a probable cause and a reasonable foundation for the judgment of the officer that a crime is being committed. 2 Ruling Case Law, 451, lays down the rule as follows: "Probable cause for an arrest has been defined to be a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty." The following cases bear on the general subject under consideration Welsh v. United States (C. C. A.) 267 Fed. 819; United States v. Borkowski (D. C.) 268 Fed. 408; United States v. Fenton (D. C.) 268 Fed. 221; Wiggins v. United States (C. C. A.) 272 Fed. 41; Elrod v. Moss (C. C. A.) 278 Fed. 123; Lambert v. United States (C. C. A.) 282 Fed. 413; Vachina v. United States (C. C. A.) 283 Fed. 35; McBride v. United States (C. C. A.) 284 Fed. 416; Snyder v. United States (C. C. A.) 285 Fed. 1; Bell v. United States (C. C. A.) 285 Fed. 145; Boyd v. United States (C. C. A.) 286 Fed. 930; Donegan v. United States (C. C. A.) 287 Fed. 641; Park v. United States (C. C. A.) 294 Fed. 776. We refer in particular to some of them.

In McBride v. United States (C. C. A.) 284 Fed. 416, 419, the court said: "At common law it was always lawful to arrest a person without warrant, where a crime was being committed in the presence of an officer and to enter a building without warrant, in which such crime was being perpetrated. Wharton, Criminal Procedure (10th Ed.) §§ 34, 51; Delafoile v. New Jersey, 54 N. J. Law, 381, 24 Atl. 557, 16 L. R. A. 500, 502; In re Acker (C. C.) 66 Fed. 290, 293. Where an officer is apprised by any of his senses that a crime is being committed, it is being committed in his presence, so as to justify an arrest without warrant."

In United States v. Rembert (D. C.) 284 Fed. 996, 1002, the court says there is no doubt that federal officers may arrest without a warrant persons who commit in their presence acts declared by the Penal Code to be misdemeanors. Also Ex parte Harvell (D. C.) 267 Fed. 997.

In Welsh v. United States (C. C. A.) 267 Fed. 819, 821, the question was raised as to the use in evidence of a certain letter. It was claimed it was seized on defendant's person without any search warrant and used in evidence against him, in violation of the Fourth and Fifth Amendments to the Constitution. The record, however, in the trial court showed defendant was arrested when committing a felony. The court said: "And the letter taken was the instrument of crime, the very thing which the act prohibited from being brought into the United States except by mail. It was the right and duty of the government to seize it, just as it would seize burglars' tools found on a defendant's person when arrested."

In Donegan v. United States (C. C. A.) 287 Fed. 641, 649, a question arose over the receipt in evidence of letters and telegrams taken from plaintiff in error at the time of his arrest. It was claimed that the search for and seizure of these letters violated his constitutional protection. They were taken from plaintiff in error and from his inner and overcoat. The court says the papers found in this person's room had no sanctity of protection by reason of anything in the Constitution. The papers seized were instruments of the crime of conspiracy to violate the National Prohibition Act, and likewise an instrument of the crime set forth in the first 12 counts of the indictment. Further the court said: "Probable cause existed warranting the arrest of the plaintiff in error. * * * It was no mere suspicion that prompted the arrest, but first-hand knowledge of a criminal conspiracy." The papers were taken when the arrest for the conspiracy occurred, and it was held that seizure of such papers and using them for evidence after taking them from his overcoat and inner coat did not violate the Fourth or Fifth Amendments to the Constitution, citing Weeks v. United States, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177; Amos v. United States, 255 U. S. 313, 41 Sup. Ct. 266, 65 L. Ed. 654.

In Vachina v. United States (C. C. A.) 283 Fed. 35, 36, officers entered a kitchen in the rear of the soft drink barroom. They found a bottle and a demijohn containing intoxicating liquor unlawfully in plain sight and took them. They were there under a

search warrant, which it was claimed was illegal. The court said the search warrant was unnecessary; that the plaintiff in error was engaged in the actual commission of an offense denounced by the law in that he had possession of intoxicating liquor in his place of business. There was no question as to its being intoxicating liquor, and the evidence was not a mere suspicion. The court said: "The Fourth Amendment to the Constitution, which prohibits unreasonable searches and seizures, is to be construed in conformity with the principles of the common law. At common law officers may arrest those who commit crimes in their presence, and they may avert a crime in the process of commission in their presence, by arrest, and without a search warrant they may seize the instrument of the crime."

In United States v. Borkowski (D. C.) 268 Fed. 408, there was a situation where a warrant had been issued for the search of a house. While engaged in the search the officers smelled raisins in the process of cooking somewhere. It seemed to come from a house two or three doors away and they saw persons moving in a cellar. Going there, they found a still in operation. They discovered defendants therefore in the commission of an act of a criminal character and searched the premises. It was claimed there was no objection made to the search. The fact was admitted that raisins were cooking in the cellar, that a still was in fact in operation, that raisin whisky and mash were found, and the articles used in making the whisky were seized. The court says the rule, state and federal, is that officers may arrest those who break the peace or commit crimes in their presence, and that an officer may arrest when he actually sees the commission of the misdemeanor or felony. The court inquires why he may not do the same if the sense of smell informs him that a crime is being committed, that sight is but one of the senses, and that an officer may be so trained that the sense of smell is as unerring as the sense of sight, and that the power to arrest may exist if the act of commission appeals to the sense of smell as well as that of sight, and hence the court held that the officers properly arrested the defendants and properly seized the utensils.

In United States v. Rembert (D. C.) 284 Fed. 996, 1001, the court says: "Now it appears from these decisions that it is not essential that, in making an arrest without warrant, the officer must absolutely know that an offense is being committed; he must believe it is being committed, and must be-lieve upon the evidence of his own senses in the case of a misdemeanor, and in the case of a felony upon credible evidence of other persons."

In Park v. United States (C. C. A.) 294 Fed. 776, intoxicating liquor had been taken from defendant's automobile after he had been arrested and taken to the police station. The question was raised that the seizure was without warrant or due process of law, and illegal. It was held that an officer could take into consideration what he sees or learns through his senses at the time, and also "other sources of information"; that if, from all such sources of information, there was reasonable ground to believe an arrest should be made, and he acts in good faith, he is justified in making the arrest; and that if the officer, at the time of the seizure, has ascertained facts through the exercise of his senses, sight, smell, etc., coupled with other sources of information that would justify a reasonably prudent man in believing that the crime of transporting liquor in a vehicle contrary to law, was being committed in his presence, a seizure would be authorized.

It is not necessary that the officers actually see the liquor, the subject of the apprehension. In United States v. Rembert (D. C.) 284 Fed. 996, 1006-1007, the court said: "Under the Volstead Act, an express provision for seizure upon discovery of illegal transportation is made, and the term 'discovery,' as used in this act, is to be construed in the light of the principles of American and English common law, defining when arrests can be made without warrant; that is, when an offense occurs in the presence of an officer, and a discovery may be said to have been made by the federal officers when the evidence of their senses induces them to believe, upon reasonable grounds for belief, that an offense is being committed, and it is not necessary, if a sincere belief exists, and this belief is based upon reasonable grounds, that the officer actually see, before apprehension is made, the liquor the subject of the apprehension."

In Elrod v. Moss (C. C. A.) 278 Fed. 123, 130, the court said: "Under the federal as well as the state statutes, to justify search and seizure or arrest without warrant, the officer must have direct personal knowledge, through his hearing, sight, or other sense, of the commission of the crime by the accused. But it is not necessary that he should actually see the contraband liquor. Here the plaintiff had resisted the warrant to search his car for contraband

liquor; he had struck the officer from his car to prevent the search, and in flight had thrown a package from his car. We think the jury might well conclude that all this constituted a discovery by Gosnell of the plaintiff in the act of transporting contraband liquor in his automobile, and that Gosnell was justified in making the arrest for interference by plaintiff with the performance of his official duty."

[7] If the seizure is merely based upon a suspicion, and the facts are not sufficient to justify an arrest, the subsequent discovery by an examination of the evidence, secured by the seizure, that the suspicion was in fact well-founded, is not sufficient to make what was unlawful at its commencement, a lawful search. United States v. Slusser (D. C.) 270 Fed. 818.

We have reviewed the leading cases dealing with the question here involved, appreciative of its very great importance, and realizing the duty of courts to be ever watchful that the rights of citizens guaranteed to them by the Constitution of the United States and amendments thereto, be protected, and not to permit zeal to enforce one amendment to the Constitution to destroy others. The Fourth Amendment to the Constitution is properly one of the most cherished by the people of the republic, and prevents petty officers from invading the homes and places of business of the people, and likewise the unreasonable search of their persons. While it is a safeguard and a protection to the citizen, it was not intended as a shield to the criminal. Its purposes have been the subject of inspiring comment by the courts. Amos v. United States, 255 U. S. 313, 41 Sup. Ct. 266, 65 L. Ed. 654; Silverthorne Lumber Co. v. United States, 251 U. S. 385, 40 Sup. Ct. 182, 64 L. Ed. 319; Weeks v. United States, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177; Adams v. New York, 192 U. S. 585, 24 Sup. Ct. 372, 48 L. Ed. 575; Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746; Veeder v. United States, 252 Fed. 414, 164 C. C. A. 338.

[8] The proper test, supported by the great weight of authority, by which this case should be decided is, were the circumstances presented to the officers through the testimony of their senses sufficient to justify them in a good-faith belief that plaintiff in error was in their presence transporting liquor in violation of law or that he had in their presence liquor in his possession in violation of law? In other words, was there

probable cause for them to so believe, or were the facts sufficient to give rise merely to a suspicion thereof? If the former the arrest was legal and the evidence secured by it admissible. If the latter, the arrest was illegal, and the evidence obtained not admissible.

In determining whether the Fourth Amendment has been violated by an unreasonable search and seizure, no general rule can be laid down, but each case must necessarily be determined by its particular facts and circumstances. Lambert v. United States (C. C. A.) 282 Fed. 413. The strongest case urged by plaintiff in error is Snyder v. United States (C. C. A.) 285 Fed. 1. There defendant was arrested without a warrant by a prohibition agent on suspicion that he was transporting liquor on his person in violation of law. The evidence shows that defendant was standing on one of the public streets in the city of Wheeling, W. Va., when he was approached by a federal prohibition officer, who, observing the inside pocket of his overcoat bulged out and the neck of a bottle protruding therefrom, forcibly took the bottle from him, and, finding it contained liquid of the appearance of whisky, placed him under arrest. The question was whether the arrest and search without a warrant were legal. There was no other justification in that case for the arrest than the mere suspicion that the bottle, only the neck of which could be seen protruding from the pocket of defendant's coat, contained intoxicating liquor.

The situation of a person on a street with a bottle in his pocket, creating a suspicion in the mind of an officer that he is transporting liquor illegally, is quite different from the situation in this case. The evidence here shows the existence of a place where evidently the illegal keeping of liquor was so notorious that a search warrant had been issued to search it, and it was being searched when plaintiff in error appeared on the scene. He had nothing to do with the ownership or management thereof, but was evidently on familiar terms with it. He entered by a rear door. A motion of some kind was made to him by the proprietor, which evidently apprised him that it was not the place for him to be at that particular time, and he sought to flee. Witness Warfield, one of the prohibition agents, testifies that he called to Agent Rains, "Stop that man, Rains, he has two pints of whisky there;" that plaintiff in error then increased his pace toward the front door; that Warfield then called to Rains, "Hurry

up and catch that man;" that Rains jumped over the bar and plaintiff in error started to run toward the front door, followed by Rains; that he apprehended plaintiff in error outside of the building, took the bottles, which proved to contain whisky, and brought him back; that plaintiff in error, in conversation after he was brought back, stated he had been carrying liquor for the past two years. The bottles were covered with a colored paper wrapped around them.

Prohibition Agent Rains testified with relation to the package, "Upon looking and observing him I could see the bottles easy— the outlines of them—two pint whisky bottles; Warfield ordered him to stop, and I hesitated for a moment before I jumped back over the bar and apprehended him; I told him to stop twice;" that he pursued him as he ran, and caught him on the sidewalk in front of the place of business; that the paper around the bottle was of thin texture, but strong; that he could not see through it. It is also in evidence, drawn out by the cross-examination of witness Warfield, that complaints had been made that plaintiff in error had been transporting liquor. While the actual whisky was not seen in the bottles by the officers before the arrest, yet the bottles were plainly whisky bottles and could be observed through the thin paper. Plaintiff in error was in a place being searched for liquors. Complaints had been made of him transporting liquor. His familiarity with the situation is evidenced by the motions of Johnson to him, which he seemed to thoroughly understand, and his flight was a circumstance, also, that could be considered as bearing on his guilt. Allen v. United States, 164 U. S. 492, 499, 17 Sup. Ct. 154, 41 L. Ed. 528. Innocent people sometimes flee from officers, but not frequently.

This case presents very different circumstances from those in Snyder v. United States, supra, where the arrest was based on a mere suspicion. If probable cause, as we have heretofore defined it, existed for the arrest, the officers had the right to make it and to secure the liquor, and were not compelled to permit plaintiff in error to escape while they were securing a warrant. We are satisfied this seizure was not in violation of the Fourth Amendment to the Constitution. There were circumstances apparent to the senses of the officers sufficient to justify belief that the crimes charged in the information were being committed in their presence. Hence the arrest was legal, the seizure justified, the intoxicating liquor admissible in evidence, and the decision of the court correct.

Affirmed.